PHILLIP L. ALLISON, Plaintiff-Appellant, *v.* JOHN G. DAVIES *et al.*, Defendants-Appellees.

Third District No. 78-61

Opinion filed October 18, 1978.

ALLOY, J., specially concurring.

J. Bruce Smith, of James Walker, Ltd., of Bloomington, for appellant.

James S. Dixon, of Peoria, for appellee James B. Head.

John P. Nicoara, of Baner & Nicoara, of Peoria, for appellee John G. Davies.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff brought an action for personal injuries suffered when he was struck by an auto while standing next to a vehicle he was about to enter. He appeals from the judgment entered in favor of defendants after the

jury returned a special interrogatory finding plaintiff guilty of contributory negligence.

During the evening of May 18, 1974, plaintiff and four others spent "an evening of merriment" together, visiting four different bars between 8 p.m. and 3:45 a.m., and traveling in a two-door car driven by defendant James B. Head. Plaintiff testified that he had six to eight drinks during that time. As the group left an East Peoria tap in the rain, Head pulled his car partially up on the sidewalk with the right side and rear of the auto partially extending into the street. Three of the group got into the car, and plaintiff, who had stayed behind to pay the bill, came out and went around the car to get in from the street side. Defendant John Davies was driving south on Main Street and struck plaintiff, inflicting serious injuries.

At the conclusion of the trial, the jury returned a special interrogatory finding plaintiff guilty of contributory negligence along with a general verdict finding Davies not guilty but finding Head liable for damages of $10,000. The trial court set aside the verdict against Head and entered judgment for both defendants based upon the special interrogatory. The plaintiff appeals from this judgment on the ground that allegedly erroneous rulings of the trial court on the evidence and instructions denied him a fair trial.

■ It is well established that a special interrogatory controls a general verdict. (Ill. Rev. Stat. 1973, ch. 110, par. 65; *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16.) It could be argued that the jury may have been confused in finding that contributory negligence on the part of the plaintiff was harmless and was not affected by the determination of the jury in awarding damages as against defendant Head. Perhaps this was a practical application of the doctrine of comparative negligence; however, we believe that a decision to apply theories of comparative negligence in the instant case would require substantive and procedural formulations which are best suited to legislative action. These particular issues were fully considered by our supreme court in the case of *Maki v. Frelk* (1968), 40 Ill. 2d 193, 239 N.E.2d 445, where the court held that a change in the basic tort theory of contributory negligence by adoption of a rule of comparative negligence "should be made by the legislature rather than by the court."

■■ The first contention of the plaintiff is that the court erred in admitting testimony of the number of drinks consumed by plaintiff prior to his injury as evidence of his contributory negligence. Defendants claim that the supporting evidence of intoxication was sufficient to justify admission of evidence of drinking. We recognize the general rule that drinking an alcoholic beverage does not of itself raise the question of intoxication which must be proved by the evidence and testimony of witnesses. As the

court said in *Shore v. Turman* (4th Dist. 1965), 63 Ill. App. 2d 315, 323, 210 N.E.2d 232:

> "Drinking, standing alone, cannot be equated with intoxication, nor can the use of alcoholic liquor, standing alone, characterize a person as intoxicated."

The defendant Davies relies upon the testimony of one member of the group, Ann Tucker, who said in a deposition and testified later for defendant, that plaintiff "was feeling no pain," that he "was * * * feeling happy" and that he was possibly "feeling less pain" than defendant Head. This, it is argued, is sufficient evidence tending to show intoxication to justify admission of testimony that plaintiff consumed six or eight drinks during the evening.

Plaintiff contends that Tucker's testimony that plaintiff was "feeling no pain" does not necessarily equate with intoxication and under *French v. City of Springfield* (4th Dist. 1972), 5 Ill. App. 3d 368, 283 N.E.2d 18, opinion testimony must be phrased in terms of intoxication. In *French*, a doctor testified that to the extent there is measurable alcohol in a person's blood, that person was under the influence of alcohol. The appellate court held that the test is not whether the person was "under the influence," but whether or not he was *intoxicated* within the definition of that term as contained in IPI Civil No. 150.15 (2d ed. 1971) revised. That court went further in stating the trial court erred because the jury had not been instructed on the issue of intoxication since the lack of these instructions left the jury in a complete vacuum as to how it was to deal with the evidence. (5 Ill. App. 3d 368, 376-77.) It appears to us that the court in *French* was saying that proof of consumption is insufficient unless there is some evidence to show that the drinking of alcohol resulted in a diminishment of a person's ability to think and act with ordinary care, as per IPI Civil No. 150.15 (2d ed. 1971).

A similar situation was discussed in *Wilson v. Parker* (2d Dist. 1971), 132 Ill. App. 2d 5, 269 N.E.2d 523, where plaintiff was a passenger in a car struck by defendant. Plaintiff appealed a jury verdict for defendant, claiming it was error for the trial court to instruct the jury regarding the intoxication of plaintiff because there was insufficient evidence in the record. The appellate court affirmed, holding that the testimony of plaintiff that he had four to five beers, plus the testimony of a fellow passenger that plaintiff "wasn't really drunk where he did not know what he was doing" was sufficient. The court went on to say: "This certainly created an issue to be presented to the jury and the instruction [IPI Civil No. 12.01] was properly given." 132 Ill. App. 2d 5, 9, 269 N.E.2d 523, 526.

Again, a similar issue arose in *Doria v. Costello* (1st Dist. 1974), 22 Ill. App. 3d 505, 318 N.E.2d 40, where the reviewing court, in affirming a verdict and judgment for defendants, found no error in the admission of a

policeman's testimony that he thought plaintiff "was under the influence" based on the expression on his face, the fact that he had a few drinks and seemed carefree. See also *Weiner v. Trasatti* (1st Dist. 1974), 19 Ill. App. 3d 240, 311 N.E.2d 313.

Over plaintiff's objection, defendant Davies' instructions No. 4, IPI Civil No. 12.01 (2d ed. 1971) and No. 8, IPI Civil No. 150.15 (2d ed. 1971) were given. They are as follows:

Defendant Davies' Instruction No. 4 (IPI Civil No. 12.01 (2d ed. 1971)):

"Whether or not a person involved in the occurrence was intoxicated at the time is a proper question for the jury to consider, together with other facts and circumstances in evidence in determining whether or not he was contributorily negligent. Intoxication is no excuse for failure to act as a reasonably careful person would act. An intoxicated person is held to the same standard of care as a sober person."

Defendant Davies' Instruction No. 8 (IPI Civil No. 150.15 (2d ed. 1971)):

"A person is 'intoxicated' when as a result of drinking alcoholic liquor there is an impairment of his mental or physical faculties so as to diminish his ability to think and act with ordinary care."

■■ We conclude that Ann Tucker's testimony that plaintiff was "feeling no pain" and "was feeling * * * happy," taken in its entirety, was sufficient to place the question of plaintiff's sobriety or intoxication in issue. Her failure to use some form of the word "intoxicated" was not a fatal omission since her meaning was reasonably discernible. To require a witness to recite certain required words would be unrealistically technical.

Having found that the evidence relating to intoxication was properly admitted, it logically follows that the court must instruct the jury on the issue of plaintiff's intoxication. Plaintiff, however, argues that the court erred in giving defendant Davies' instruction No. 4 (IPI Civil No. 12.01 (2d ed. 1971)) as to the effect of intoxication upon the issue of plaintiff's contributory negligence, while failing to instruct on the effect of intoxication as to defendant's negligence. This court in *Patarozzi v. Prairie States Oil & Grease Co.* (3d Dist. 1966), 71 Ill. App. 2d 155, 158-59, 218 N.E.2d 113, said:

"The issue of contributory negligence was for the jury to determine. It is well recognized that 'one may be contributorily negligent where he is voluntarily intoxicated to such an extent that his intoxication prevents him from taking proper care and caution to avoid injury to himself.' 28 ILP, Negligence, §142. '* * * Thus, evidence of plaintiff's intoxication is admissible, * * * as a circumstance to be weighed by the jury in their determination of the issue whether or not plaintiff exercised ordinary care for his

own safety.' 38 Am. Jur., Negligence, §203, at 883. In *Fox v. Hopkins*, 343 Ill. App. 404, 99 N.E.2d 363, 26 ALR 2d 352, evidence of the defendant's intoxication at the time of the automobile collision was admitted notwithstanding the fact that no charge of intoxication against the defendant was made in the plaintiff's complaint. The Appellate Court, in deciding that this evidence was properly admitted by the trial court, stated:

'It is our opinion that such testimony was material and evidentiary in its nature, the same as was the condition of the road, whether dry or slippery, and the condition of the weather, whether dark or light or clear or foggy, and that such testimony was therefore admissible as tending to prove negligent conduct of the defendant as charged, although not specifically pleaded.'

Whether the fact of intoxication, if proved, would or would not have 'added anything' in the case at bar, was manifestly a question for the jury. It was for the jury to determine if evidence of decedent's intoxication, considered with other evidence in the case regarding decedent's behavior, constituted a lack of due care on the part of decedent."

■■ In the instant case, we believe the court properly instructed the jury on the issue of contributory negligence. Of more importance is the failure of plaintiff to show any evidence of defendant Davies' intoxication while at the same time he correctly agrees that the mere consumption of alcoholic liquor, without more, is insufficient to raise the issue of intoxication. To do as plaintiff suggests would have been error to inject the issue of intoxication into the record through the medium of instructions without a factual basis. It seems clear to us that since there was no evidence of unusual behavior or opinion evidence which tended to show that conduct of defendant Davies may have been affected by the drinks he consumed, any instruction referring to his negligence on the grounds of intoxication would have been reversible error. (See *Shore v. Turman* (4th Dist. 1965), 63 Ill. App. 315, 323, 210 N.E.2d 232.) Furthermore, plaintiff's reliance on *Kitten v. Stodden* (5th Dist. 1966), 76 Ill. App. 2d 177, 221 N.E.2d 511, is misplaced. A careful reading of that decision indicates that there was testimony that the defendant "two hours after the accident * * * was intoxicated." (See *Kitten*, at 182.) With no such evidence in the instant case, the court quite properly submitted IPI Civil No. 12.01 (2d ed. 1971) in the form that was given.

■■ Plaintiff's contention that the trial court erred in allowing counsel for defendant Davies to examine Ann Tucker with leading questions is without merit. The record indicates she was first called by plaintiff and was cross-examined by defendant Davies but plaintiff objected to certain

questions as being beyond the scope of direct examination. Later defendant Davies called Ann Tucker as his witness and established that she was a friend of both the plaintiff and defendant Head and attempted, by the use of leading questions, to determine her opinion of plaintiff's conduct just prior to his injury. Plaintiff's counsel objected to the leading questions and a conference was then held at the bench which the record reflects was out of the hearing of the jury and court reporter. Plaintiff's counsel then stated on the record that the trial court had upon defendant Davies' request, authorized the use of leading questions which plaintiff objected to because there was no showing of the witness' hostility. The remainder of the direct examination of Tucker consisted of the leading questions about her statement in a deposition that plaintiff was "feeling no pain." From the record before this court, it is impossible to determine the basis for the trial court's ruling allowing defendant Davies to cross-examine Ann Tucker. Just recently this issue was presented in *Addison v. Health & Hospital Com.* (1st Dist. 1977), 56 Ill. App. 3d 533, 537, 371 N.E.2d 1060, 1063, and the court said:

> "As the appellant in this cause, plaintiff was under a duty to present a full and complete record. Any doubt arising from the incompleteness of the record will be resolved against appellant. [Citations.] The sketchy record in this case leaves us no choice but to affirm the dismissal of plaintiff's complaint."

The admission of evidence rests largely in the discretion of the trial court whose decision should be reversed only when such discretion has been clearly abused. Since there is nothing to indicate an abuse of the trial court's discretion we will affirm the trial court's action on this issue.

Plaintiff's final contention concerns some evidentiary matters. First, the direct examination of defendant Head "were any citations issued?" and his answer "No" is opposed even though plaintiff did not object to the question when asked, but moved for a mistrial at the close of all the evidence. Not only was the plaintiff silent when the question was asked, but later plaintiff waived any rebuttal testimony.

A close examination of the record leaves no doubt that the plaintiff not only failed to object at the time the question and answer was given, but made no motion to ask that the testimony be stricken and jury instructed to disregard the same. The trial court properly held the plaintiff to have waived any possible error. See *Jacobs v. Holley* (2d Dist. 1972), 3 Ill. 3d 762, 279 N.E.2d 186; *Placher v. Streepy* (2d Dist. 1958), 19 Ill. App. 2d 183, 153 N.E.2d 369.

■■ Plaintiff's other contention concerning the hearsay nature of the testimony of defendant Davies and his answer relating that Officer Madison said "I can't hold you responsible in any way, Mr. Davies" was not included in plaintiff's post-trial motion. We conclude that such an

error, if any, is not properly preserved for review because it was not stated in any manner in plaintiff's post-trial motion. See Ill. Rev. Stat. 1975, ch. 110, par. 68.1; *Hergert National Bank v. Zeeck* (3d Dist. 1971), 132 Ill. App. 2d 995, 271 N.E.2d 84 at 86; and Supreme Court Rule 366(b)(2)(iii), Ill. Rev. Stat. 1975, ch. 110A, par. 366(b)(2)(iii).

For all of the foregoing reasons, we affirm the judgment order entered by the Circuit Court of Peoria County.

Affirmed.

BARRY, P. J., concurs.

Mr. JUSTICE ALLOY, specially concurring:

I agree that under the existing law in this State, the judgment of the Circuit Court of Peoria County is required to be affirmed. I am also aware that the issue to which I will refer, was not specifically raised by the defendant James B. Head.

Under the existing law of this State, the trial court (when confronted by a specific answer to a special interrogatory to the effect that the plaintiff was guilty of some contributory negligence) was required to set aside the verdict in favor of plaintiff as against defendant Head. In view of the facts in this case, however, it is apparent that the jury made a practical application of the doctrine of comparative negligence and determined that despite the plaintiff's negligence, the defendant Head was more responsible for the injury and that judgment should, therefore, be granted as against defendant Head.

This case illustrates specifically how a determination by a jury of responsibility for the results of an accident by a defendant is required to be set aside, without inquiry into the comparative fault of the parties, on the basis of the doctrine that no recovery can be obtained in this State, if a plaintiff is guilty of any degree of negligence whatsoever. This archaic doctrine has been abolished in most of the States in this country either by judicial determination or by legislation.

In characterizing the intolerable feature resulting from the absolute bar based upon contributory negligence, Dean Prosser says in The Law of Torts 443 (3d ed. 1964):

"The hardship of the doctrine of contributory negligence on the plaintiff is readily apparent. It places upon one party the entire burden of a loss for which two are, by hypothesis, responsible. The negligence of the defendant has played no less a part in causing the damage; the plaintiff's deviation from the community standard of conduct may even be relatively slight, and the defendant's more extreme; the injured man is in all probability, for the very reason of

his injury, the less able of the two to bear the financial burden of his loss; and the answer of the law to all this is that the defendant goes scott free of all liability and the plaintiff bears it all."

This result is characterized as intolerable for the obvious reason that it defeats the basic principles of doing justice as between the parties in an action for damages in a case of the character we have before us.

The judges in the courts of this State have been quite aware of the inequity which results from the application of this doctrine. The consequence is that the judges of this State have recommended that a doctrine of comparative negligence be adopted in tort cases in this State to avoid such inequity.

In the 1976 Annual Report of the Administrative Office of Illinois Courts to the Supreme Court, at page 22, the supreme court addresses the members of the General Assembly urging the adoption of a comparative negligence doctrine by legislation. Chief Justice Ward there points out that after thorough study of comparative negligence, the Illinois Judicial Conference Committee on Comparative Negligence concluded that the strict contributory negligence rule, now in force in this State, should be abandoned and that the comparative negligence doctrine would furnish a better standard of justice. The supreme court, in that same document, acting through Justice Ward, also recommended that the principle of contribution among joint tortfeasors should be adopted in Illinois (1976 Annual Report 23). The court suggested that legislation be enacted to cure this problem, also.

Since that report and recommendation with respect to contribution among joint tortfeasors, the supreme court acted on its own responsibility without any legislation in the cases of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, and *Robinson v. International Harvester Co.* (1977), 70 Ill. 2d 47, and there determined that action by the supreme court should be, and was, taken to eliminate inequities in the rule of contribution among joint tortfeasors previously in force in Illinois.

Clearly, if we are to respond to the need for action to eliminate inequities in tort cases of the character referred to, we should, also, through the judicial system, grant relief to plaintiffs in tort actions through adoption of a doctrine of comparative negligence, which will eliminate the arbitrary rule of denying recovery to any plaintiff who is guilty of any degree of contributory negligence. Illinois is in the minority of jurisdictions in adhering to the present rule in force in this State, and the judges and virtually all of the authorities in the field of tort law have recommended that a comparative negligence doctrine be adopted in this State.

In the event that nothing can or will be done in this case, we suggest

that at the earliest opportunity, the courts face this important issue and take action to eliminate the inequitable rule denying recovery to a plaintiff on the basis of the presence of any degree of contributory negligence on the part of such plaintiff. Adoption of a comparative negligence standard is obviously the proper program.